CHANDLER *v.* CHANDLER.

No. 39397 January 17, 1955 77 So. 2d 255

760

*Frank A. Critz,* West Point, for appellant.

*B. H. Loving,* West Point, for appellee.

McGEHEE, C. J.

There are quite a number of questions raised on this appeal and the record is about as much complicated as those on appeal from the average trial in a replevin suit. We are treating the case as being an appeal from a decree of August 12, 1953, adjudging the appellant guilty of a civil contempt, and ordering him to jail unless he pays the amount awarded under that decree within the time therein provided for, and also as an appeal from the action of the trial court on November 13, 1953, again ordering him to jail without hearing a petition at the November 1953 term of the chancery court to change the terms of the decree of August 12, 1953, on account of the

alleged changed conditions intervening between August 12, 1953, and November 13, 1953.

On September 28, 1953, which was prior to the expiration of the six months then allowed by law for an appeal to this Court from the decree of August 12, 1953, there was a petition presented by the appellant, Allen Chandler, Jr., to a member of this Court to grant him a supersedeas of the punishment provided by the decree of August 12, 1953, to extend to the November 1953 term of the trial court.

It was alleged in the petition to a member of this Court that the appellant was only earning about $600 per annum with which to support his second wife and two minor children and that the appellee, Mary Belle Terry Chandler, to whom the appellant had been ordered to pay money for the support of her child, Bettie Mae Chandler, was earning approximately $1,800 per annum. It was further alleged in the said petition that the appellant, Allen Chandler, Jr., "has a defense to this proceeding, which will be in the nature of a Bill of Review which can not be heard until the regular term of court, and the evidence and the facts under said Bill of Review can not be introduced under the present proceedings," the pleadings being those in Cause No. 6054 in which the decree of August 12, 1953, has been rendered. It was further alleged in this petition to a member of this Court that the petitioner, Allen Chandler, Jr., "was defrauded by a statement in the pleading (in Cause No. 5668 of the Chancery Court of Clay County wherein the appellee had sued the appellant for a divorce) that he was the father of the child of the complainant, as if said child were born in wedlock, when the fact is, as shown by the official record of births, said child was born November 8, 1939, and the complainant and defendant were not married until October 14, 1940, as shown by Marriage Record 31, page 25 of the marriage records of Clay County, Mississippi. That the minor child Bettie Mae

is not the daughter of the defendant, but the step-daughter of the defendant, and by error, of which the defendant had no knowledge, in some of the proceedings it was stated that said minor was the daughter of the defendant, when in fact she was only the stepdaughter of the defendant.'' It was further alleged in said petition that ''the defendant, Allen Chandler, Jr., is now, on this the 28th day of September, 1953, incarcerated in the Clay County jail, and is thus unjustly punished.''

After due notice to the mother of the said child that the petition would be heard on October 6, 1953, before a member of this Court, and upon a failure of the appellee to get her answer thereto mailed in time to reach the judge here before that date, an order was entered on the said 6th day of October, 1953, by a member of this Court who granted a supersedeas to the effect that the execution of the provisions of the decree of the Chancery Court of Clay County of August 12, 1953, be suspended ''until a further and final hearing of this cause at the regular term thereof, commencing on the second Monday of November 1953.''

■■ ■ We construe the above-mentioned order as one sustaining the petition presented, and for the purpose of allowing the petitioner to file a bill of review, or a bill in the nature of a bill of review, as prayed for therein, and that the supersedeas was granted until a further and final hearing of the cause could be heard at the November 1953 term of the chancery court on such bill of review, or bill in the nature of a bill of review; and that the supersedeas expired when the petitioner failed to file either of such bills in the term of court which convened on November 9, 1953, due to the fact that the attorney did not have a transcript of the testimony heard at the August 1953 term and had decided to file a petition instead to ask for a modification of the said former decree on account of the alleged changed conditions in the meantime as to the then financial ability of

the appellant; that the chancellor was therefore warranted in holding that the supersedeas had expired and in ordering the petitioner into the custody of the sheriff to be placed in jail for having failed to pay any sum whatsoever on the amount allowed for the support of his child, for which he was adjudged in willful contempt of the court on August 12, 1953. But we are of the further opinion that the petitioner upon being ordered back into jail was entitled to be heard upon a petition after proper process on the appellee thereon, as to whether or not he had been since August 12, 1953, and was then able to pay the amount awarded under the former decree or any part thereof. Ramsay v. Ramsay, 125 Miss. 185, 87 So. 491, 14 A. L. R. 712; Collins v. Collins, 171 Miss. 891, 158 So. 914; Dickerson v. Horn, 210 Miss. 655, 50 So. 2d 368; McArthur v. McArthur, 32 So. 2d 695; Lewis v. Lewis, 213 Miss. 434, 57 So. 2d 163.

A decree of November 12, 1952, fixed a lien on the 1/6th undivided interest owned by the appellant in 363 acres of land, but such interest was never sold under the provisions of that decree. If he was residing on said land with his second wife and their child or children at the time of the rendition of the decree of November 12, 1952, the lien fixed by the decree would be subject to their homestead rights. If he was not residing on the same under those circumstances at the time the lien was fixed in favor of his former wife for the support of the child by his first marriage, then his interest in said land would be subject to sale under the said lien fixed by the decree of November 12, 1952. Felder, et ux v. Felder's Estate, et al., 195 Miss. 326, 13 So. 2d 823, which holds that the ex-husband cannot move on the land subsequent to the fixing of a lien thereon for alimony and prior to a sale under the lien, and thereby prevent the former wife from enforcing such lien against the same.

As to whether or not Bettie Mae Chandler was a child born of the marriage between the appellant and the ap-

pellee, that issue was adjudicated by the decree of divorce in Cause No. 5868 of the Chancery Court of Clay County on November 1, 1948, and that decree was not appealed from. The bill of complaint in that cause alleged that the complainant, Mary Belle Terry Chandler, and the defendant, Allen Chandler, Jr., had one child, Bettie Mae Chandler, then six years old. The answer and cross bill of the defendant in that cause admits "that there was one child born to this marriage, Bettie Mae Chandler." It was further admitted therein that he (the defendant) "is responsible and liable to contribute to the support and maintenance of his minor child, and this he is willing to do within the limits of his ability and means."

 █ It is difficult to conceive how the defendant could have been misled and defrauded as to whether he was then the father or stepfather of the said child as he now contends in the present proceeding. Moreover, if the adjudication in the decree of November 1, 1948, to the effect that "there was born to this marriage one child, Bettie Mae Chandler, who is in the custody and care of her mother, Mary Belle Terry Chandler, and that the permanent care and custody of said minor should be awarded to her mother, Mary Belle Terry Chandler," was obtained by fraud, then the question could only be raised by a bill in the nature of a bill of review, since the decree is valid upon its face, and being unappealed from is res adjudicata of that issue.

 █ However, it is contended by the appellant that since the decree of November 1, 1948, awarded to the mother the *care* and custody, it became her sole duty to support the child. It should require no citation of authority to support the rule that the care and custody of a child may be awarded to its mother and the duty imposed upon the father to contribute alimony for its support and maintenance. But during the pendency of the divorce proceeding, the chancellor in whose district Clay

County was located prior to the final hearing, had entered an order requiring the defendant to pay to the complainant the sum of $17.50 per month for the support and maintenance of the minor child, which his successor, as chancellor in that county, adjudicated to have been born of the marriage of the appellant and the appellee. That order was rendered by the former chancellor on November 11, 1947, but the succeeding chancellor undertook in the decree of divorce to rescind and vacate the order which had required the husband to contribute the $17.50 per month for the support of the child. As to whether he had authority to relieve an able-bodied father of a child of any liability for its future support and maintenance, it is unnecessary for us to decide in this case. ▇▇ ▇ Most assuredly he could not relieve him of civil liability on the installments already accrued.

Thereafter, the appellee, as mother of the child, continued to support the same, as she had done prior to the divorce, since the appellant has never paid any sum whatsoever for its support and maintenance. But on October 21, 1950, she filed another original bill as Cause No. 6046 of the Chancery Court of Clay County seeking to recover from the appellant the sum of $408 which she had expended for the support and maintenance of this child and asked that a lien be fixed upon the land of the appellant to insure the reimbursement of such expenditure, and to require the appellant to contribute monthly to its future support. A lis pendens notice was filed against the land in said cause. The case was continued from time to time at the instance of the defendant Allen Chandler, Jr., who filed an answer in said cause on December 26, 1950. The case was further continued from time to time until it was finally heard on November 12, 1952, when a decree was rendered against the defendant for the sum of $900, including alimony for the support of the child and an attorney's fee, and requiring the defendant to pay the sum of $17.50 for the future sup-

port and maintenance of the child, and fixing a lien upon the 1/6th undivided interest of the 363 acres of land. Thereafter, the defendant continued in his failure to contribute anything monthly to the support of the child, and failed to pay any part of the $900 awarded against him.

Finally, on February 16, 1953, the appellee filed her petition for citation of the appellant for contempt of court. On February 24, 1953, the present chancellor ordered a sale of the land for the satisfaction of the decree, but this record fails to disclose that the land was advertised for sale or ever sold. Thereafter, on June 29, 1953, the defendant filed an answer setting forth that he had married again and that he, his wife and two minor children, were residing on said land as a homestead, and that he was only making about $600 per annum as a farmer, out of which he was supporting his second wife and two children born of that marriage.

The contempt proceeding was continued from time to time, and an amended petition for the citation for contempt was filed, setting forth the amount of monthly installments of alimony then in arrears, and to which the defendant filed an answer saying that the monthly installments were not paid because the defendant was not financially able to pay them, and that he was not guilty of a willful contempt of court.

On August 12, 1953, a final decree in this contempt proceeding was rendered, which recited that the cause was heard upon the pleadings hereinbefore mentioned "and upon proof heard by the chancellor on behalf of both parties." This decree adjudged the defendant to be guilty of a willful refusal to have ever paid anything on the award of alimony for the support of this child, and the decree adjudged that the defendant should be committed to the county jail until he should pay the full sum of $1,057.50 then found to be in arrears, together with interest thereon, and the costs of court. This decree

allowed the defendant forty-five days from the date thereof within which to pay $750 of the amount in arrears, and until November 1, 1954, to pay the remaining $307.50 of the money award. It is not assigned for error on this appeal that the trial court in its decree of August 12, 1953, was without authority to include in the award against the appellant of $1,057.50 then found to be in arrears, such sum or sums of money as may have been expended by the appellee for the support of the child between November 1, 1948, and November 12, 1952, when he fixed the future installments at $17.50 per month. It was the duty of the defendant to have supported this child during that interval, and assuming that he was civilly liable to the appellee for reimbursement to her of the sums that she had necessarily expended for the child during that period, it is not assigned as error that the court should not have taken those expenditures into consideration when finding the defendant guilty of contempt on August 12, 1953, for failure to have paid the entire sum of $1,057.50 then in arrears.

We do not have the benefit of the "proof heard by the chancellor on behalf of both parties" upon which this decree was rendered. Therefore, we are unable to determine whether or not the chancellor's finding based on proof heard at that time, and adjudging that the defendant was able but had refused to pay anything for the support of this child, was fully supported by the testimony. We assume that the proof supported the decree. Therefore, that decree must be affirmed. It does not order the defendant's interest in the land sold, as had been provided for in the former decree, and it may have been that the chancellor was of the opinion that the land constituted the homestead of the appellant at the time of the rendition of the former decree of November 12, 1952, fixing a lien thereon.

No notice to the court reporter appears in the record requesting that the testimony taken on August 12,

1953, be transcribed, assuming that same was taken down by the court reporter. The only notice to the court reporter to transcribe his stenographic notes is one dated November 13, 1953, which was long after the expiration of the ten days allowed by law after the rendition of the decree of August 12, 1953, finally adjudging the appellant guilty of contempt. This notice is effective only to require that the notes taken on the hearing on November 13, 1953, be transcribed in connection with the appeal. All that transpired on that day, as disclosed by this record, is the ruling of the chancellor that the supersedeas granted by a member of this Court had expired, and ordering that the defendant be recommitted to the jail until he purges himself from contempt for failure to have complied with the decree of August 12, 1953, together with the statement of appellant's counsel, dictated into the record, that there had been a change in his circumstances since the rendition of the decree adjudging him in contempt of court, in that all of his property had been foreclosed under a deed of trust in the meantime, except his homestead, and that he still owed the creditor who foreclosed the deed of trust on his other property the sum of approximately $700. The appellant had filed a petition on November 11, 1953, asking the court to change the decree rendered on August 12, 1953, on account of these changed conditions. Upon motion of the appellee, this petition was stricken on November 13, 1953, and the defendant remanded to the custody of the sheriff for his recommittal to the county jail, as hereinbefore stated.

■■■ ■ Thereupon, this appeal was requested and granted under a supersedeas bond of $300 and an appearance bond of $300. The supersedeas bond refers both to the decree of August 12, 1953, and the decree of November 13, 1953, and we are treating the appeal as being one from both of these decrees, the first of which must be affirmed because of the absence of any of the

testimony heard before the chancellor at that time showing it to be erroneous, and the last of which must be reversed and the cause remanded in order that the appellant may undertake to meet the burden of proof of showing his present inability to pay the sum awarded under the decree of August 12, 1953, and of showing that he will be unable to pay any sum that may be fixed by the chancellor to be paid monthly in the future. Of course, neither this Court nor the trial court is authorized to relieve the defendant of his civil liability for all payments now in arrears. The sole question which should be considered on remand is whether or not the defendant is able to pay anything, and if so, in what installments. There can be no question but that he has been able to pay something, or that he will be able, as an able-bodied person, to pay something in the future. He stands now in contempt of the court under the decree of August 12, 1953, and he should go to jail until he does everything possible to purge himself of his willful contempt in failing to pay any amount for the support of the child who has been judicially determined to be his own.

Affirmed in part, reversed in part, and remanded.

*Kyle, Arrington, Ethridge,* and *Gillespie, JJ.,* concur.